[L. A. No. 22095. In Bank. Feb. 19, 1952.]

BORIS GUDAROV, Respondent, v. URDANKA HAD-JIEFF, as Executrix, etc., Appellant.

Leon A. Plotnik, Fred J. Martino and Willebrandt, Zimmerman & Kelly for Appellant.

Morris Lavine for Respondent.

SCHAUER, J.—Defendant appeals from a judgment rendered by the court against him, following the entry of his default. He contends that the judgment grants relief in excess of that demanded by the complaint, in violation of the provisions of section 580 of the Code of Civil Procedure, and, further, that the court erred in refusing to set aside the default. A hearing was granted by this court (on petition of the plaintiff), after decision by the District Court of Appeal, Second Appellate District, Division Three, for the purpose of giving further study to the problems presented. After such study we have concluded that the opinion of the District Court of Appeal, prepared by Presiding Justice Shinn, correctly treats and disposes of the issues involved, and it is therefore adopted as and for the opinion of this court. Such opinion (with appropriate deletions and addita as indicated) is as follows:

"['] Plaintiff sued to recover damages resulting from a libelous letter written by defendant and published in Narodna Volya (People's Will), a Bulgarian-English language weekly newspaper distributed in Los Angeles County, the United States and the Balkan Peninsula of Europe. It is alleged that defendant caused the publication to be made 'wickedly and maliciously and with intent to injure, disgrace and defame the plaintiff and to bring him into public disgrace and obloquy.' The complaint sets out the defamatory letter in which defendant refers to plaintiff's alleged marital unfaithfulness in Bulgaria and his amorous adventures in the United States. The letter uses such descriptive language as 'rotten element,' 'most degenerated type of person,' 'Daylight Thief' and 'clever swindler.' After this 'biographical' material the letter attacks plaintiff's announced plan to act as teacher for the children of Bulgarian immigrants. Plaintiff further alleged: 'That the entire said article concerning plaintiff was and is wilfully and maliciously false and defamatory and was known to be such by defendant, Hadjieff, when he composed it and caused it to be published and circulated.'

" 'That plaintiff avers upon information and belief that by reason of the composition, publication and circulation of said article the plaintiff has been damaged by the said defendant in the sum of One Hundred Thousand ($100,000) Dollars.

" 'WHEREFORE, plaintiff prays judgment against the defendant, JOHN D. HADJIEFF, for the sum of One Hundred Thousand ($100,000) Dollars, for costs of this action and

for such other and further relief as to this Court may seem proper.'

"The complaint was filed and summons was served on defendant October 25, 1949. An oral extension of 10 days to appear was given by plaintiff's attorney to defendant's attorney on November 7th. No further contact was made between counsel until December 12th when plaintiff's attorney called and told defendant's attorney he would take a default the next day if no answer was filed. The default was taken shortly after noon on December 13th. No answer had been filed, and no attempt had been made to obtain a further extension of time from the court. On December 23d, defendant moved to vacate the default and permit answer on the ground that his neglect in failing to file an answer was excusable in that at first his attorney was ill and confined, and later defendant was ill. Defendant further alleged that his attorney had contacted plaintiff's attorney on December 13th and had been granted an additional two days in which to answer and that he was prepared to do so within that time. Plaintiff's attorney denied this conversation by affidavit. The court refused to vacate the default and on January 24, 1950, following a hearing, entered judgment for $2,500 compensatory damages and $5,000 punitive damages. This appeal followed.

"Defendant's first contention is that the award of $5,000 for *punitive* damages is void, since the only demand for relief in the complaint was for *compensatory* damages. Section 580, Code of Civil Procedure, reads: 'The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint. . . .'

"Section 580 proceeds on the theory that a defaulting defendant must be given notice of the maximum relief sought in the action, since otherwise he would be deprived of his day in court. Plaintiff agrees with this but contends that for several reasons the complaint was sufficient to justify the relief that was granted.

"With regard to the mandatory nature of section 580, it was said in *Burtnett* v. *King* (1949), 33 Cal.2d 805, 807 [205 P.2d 657, 12 A.L.R.2d 333]: 'It is equally clear that by reason of the mandatory language of the statute (the court *cannot* give a default judgment in excess of the demand), the court's jurisdiction to render default judgments can be *exercised only in the way authorized by statute*. It cannot act except in a particular manner, that is, by keep-

ing the judgment within the bounds of the relief demanded.'

■  "In a default case we must look solely to the relief which plaintiff shall have demanded in his complaint. It differs from a contested case where the issues actually tried and determined may embrace those added by answer, or may be even broader than the pleadings. (*Cf. Vaughn* v. *Jonas* (1948), 31 Cal.2d 586, 605 [191 P.2d 432].) The holdings in the contested cases relied upon by plaintiff are beside the point.

"In his prayer for relief plaintiff asked for $100,000 damages, costs and such other relief as may seem proper. Plaintiff has several theories. He says the averments of the complaint were sufficient to apprise defendant that exemplary damages were sought; that the term 'damages' embraces both compensatory and punitive damages, and, that the damages awarded were less than those sought. The award of punitive damages may not be sustained for any of these reasons.

■  "Although the publication was alleged to have been made with malicious motives, and these allegations were sufficient to sustain an award of punitive damages had they been sought, we must look to the prayer for the relief that was demanded. It was contended in *Brooks* v. *Forington* (1897), 117 Cal. 219 [48 P. 1073], that in a default case any relief could be awarded consistent with the averments of the complaint, and that as the right to counsel fees in a foreclosure action was properly alleged an award of fees was authorized although not demanded in the prayer. The court said (p. 220) : 'The position of respondent does not find support in the decisions of this court giving application to section 580. The relief "demanded in his complaint" is held to refer to the relief asked in the *prayer*—the feature of the pleading to which alone reference may be had in default cases, to ascertain what relief the plaintiff seeks; and the rule of the statute applies in its strictness to actions in foreclosure alike with those of any other character. [Citing cases.]' ■ The scope of a prayer for specific relief may not be enlarged so as to include relief of a different nature by reference to allegations of the complaint which would have justified such additional relief had the same been demanded. ■ In a default case a prayer for general relief will not support a damage award which is not contained in the prayer.

■  "The basic differences between compensatory and punitive damages refute the contention that defendant was

given notice that punitive damages were sought by the complaint. The two differ in nature and purpose. One is given as compensation; the other purely as punishment and by way of example. (Civ. Code, § 3294.) A demand or prayer for one is not a demand legally, or otherwise, for the other, or for both. ▮ The court is without authority to grant relief of a kind essentially different from that which a defaulting defendant would reasonably anticipate from a reading of the complaint. Plaintiff contends correctly that the term 'damages' embraces both compensatory and punituve damages but this argument does not reach the problem.

▮ The allegation of the complaint which immediately precedes the prayer for relief states that plaintiff has been damaged in the sum of $100,000. This can mean only compensatory damages. We think a skilled or an unskilled reader would understand the prayer for compensation in this amount to be a demand for compensatory relief and nothing more.

"The fact that the damages awarded were less than those claimed is not an answer to defendant's contention that plaintiff sought only compensatory damages and was awarded in addition to that relief damages by way of punishment. [ ]

▮ "An insufficient showing was made of a reason for relief from the default. The affidavits of defendant and his attorney were vague and evasive. While each claimed to have been ill, the duration of the claimed illness was not stated in either affidavit. Defendant's attorney did not deny that he had been granted an extension from November 7th to November 17th, nor did he allege any facts which tended to show inability to file an answer within that time, nor any excuse for not filing it later, prior to the entry of the default. It was alleged in the affidavit of defendant that he was endeavoring to make a settlement with plaintiff, and offered plaintiff $350 in settlement, and it was shown by several affidavits filed on behalf of plaintiff that defendant endeavored to induce mutual friends to bring about a settlement. Defendant alleged that he had on two occasions been 'incarcerated' in a sanitarium, suffering from kidney trouble, but the dates when he was so confined were not stated. There were also affidavits to the effect that defendant, during the time in question, was seen in attendance at several social functions. He admitted having attended a dance but alleged he did not dance. There was no showing whatever that defendant was deceived or misled in any manner other than

the claim that on December 13th defendant was granted a two-day extension, which claim was denied by affidavit. No other valid excuse was offered for the obvious negligence of the defendant and his attorney.

■ "There was no sufficient affidavit of merits accompanying the motion. A verified answer was tendered and was to be considered in determining whether there was a showing of a meritorious defense. (*Beard* v. *Beard* (1940), 16 Cal.2d 645, 649 [107 P.2d 385].) The proposed answer did not deny the fact or the contents of the publication, nor did it allege the truth of the publication. It denied that the publication was made with 'intent to injure, disgrace *and* defame plaintiff or to bring him to public disgrace or obliquy.' It was also denied that plaintiff had suffered any damage by reason of any act or acts of the defendant. The publication was manifestly libelous on its face. The only issues raised by the proposed answer would have been whether plaintiff should be awarded compensatory damages, and if so, the amount thereof. [ ] Its insufficiency to set up a complete defense was to be taken into consideration by the court in ruling upon the motion. The court naturally would be less inclined to open a default for the filing of an answer which admitted liability but denied damage, than in a case where the proposed verified answer alleged a complete defense on the merits.

■ "It is a rule as familiar as any to be found in the books that an application to vacate a default under section 473, Code of Civil Procedure, is addressed to the sound discretion of the court and will not be disturbed except in a case of manifest abuse of discretion.[1] Such long established rules should be consistently and impartially respected. Here the denial of the motion to vacate the default was [ ] proper [ ]."

The order denying the motion to vacate the default is reviewable on the appeal from the judgment (Code Civ. Proc., §§ 956, 963), and therefore the purported appeal from such order is dismissed. The judgment is modified by striking therefrom the provision awarding $5,000 as punitive damages and as so modified is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

---

[1] See 14 Cal. Jur. 1072-1073 and cases there cited.