[Civ. No. 8340. First Appellate District, Division One.—April 25, 1932.]

THOMAS B. ADAM, Respondent, v. S. R. OBARR, Appellant.

Major McGregor and Fred A. Shaeffer for Appellant.

Henry G. Bodkin and Gordon J. Hatert for Respondent.

OGDEN, J., *pro tem.*—This is an appeal from a judgment dissolving a partnership, ordering an accounting and directing the payment of debts, sale of assets and distribution thereof among the copartners.

The action was brought by the respondent, Adam, who alleged in his complaint, in so far as it concerns this appeal, that on March 1, 1922, by oral agreement, he and the appellant Obarr entered into a partnership for the purpose of carrying on a grocery and meat business known as the California Market and Grocery Company at Santa Maria, California; that it was agreed that each partner would share equally in the profits or losses; that neither partner would receive a salary; that both partners would devote all of their time and services to the partnership, and that upon the liquidation thereof each partner should receive one-half of the money of the partnership and in addition a return of the money and property invested by him therein. It was further alleged that pursuant to said agreement both parties contributed certain moneys and property to the partnership; that during the years 1924, 1925 and 1926 respondent contributed to the partnership cattle and calves of the approximate value of $17,000, as well as other property, for which he was not given credit; that appellant had withdrawn from the partnership approximately $5,000 more than respondent and in addition thereto withdrew without authorization a salary of $65 per week for a long period of time, and that appellant refused to reimburse the partnership for the amounts so wrongfully withdrawn or to credit respondent for the cattle so delivered. The complaint prayed for an accounting, and for the dissolution of the copartnership.

In his answer appellant denied that the agreement was as alleged by respondent, and alleged that it provided for the purchase by respondent from appellant of a one-half interest in the business, for which respondent was to pay the appellant the sum of $9,000, representing one-half of the amount then

invested in the business by the latter; that respondent had breached this agreement by his failure to pay any part of the purchase price and by his failure to devote his entire time to the business. The answer then alleges the contribution by respondent to the partnership of various items of money, cattle and other property and the contribution by appellant, in addition to the $18,000 originally invested, the sum of $3,000; that taking into consideration the contribution of each partner as alleged and the profits and withdrawals of each partner, the net result was that at the close of the year 1929 the investment of each partner in the business was approximately equal. He further alleged that respondent had been given credit for all cattle delivered by him or, if not, such credit should be made. The salary withdrawals are admitted, but alleged to have been authorized by agreement of the partners, but it is denied that appellant withdrew any sum in excess of the withdrawals of respondent. The answer further alleges the necessity for an accounting and joins with the complaint in a prayer therefor, and for the dissolution of the partnership.

An expert accountant was appointed by the court prior to the trial to audit the books of the partners, and was examined in detail at the trial as to the various contributions and withdrawals by each partner. The trial court, in detailed findings and conclusions of law, determined that, although the original agreement of the parties was one for the purchase by respondent of a one-half interest in the business from appellant, this was changed by a subsequent oral agreement to the effect that respondent should contribute to the partnership capital an amount equivalent to the original investment of appellant and that he did in fact so contribute to the capital of the business the sum of $3,000 in cash, real property of the agreed valuation of $1,050, and during the years 1924, 1925 and 1926 cattle and other personal property of the agreed value of $14,126.27, with the net result that, with certain hereinafter mentioned exceptions, the investment of each partner at the close of the year 1929 was approximately equal. The exceptions referred to were the amounts withdrawn from the business by appellant in excess of the amounts withdrawn by respondent during 1928 and 1929, which excesses the court found to be the sum of

$5,349.18 in 1928 and $1572.76 in 1929, together with unauthorized salary withdrawals by appellant in the sum of $3,333.32. Judgment was entered directing an accounting for the year 1930, which was not included in the report of the auditor appointed by the court, directing the sale of the partnership assets, payment of debts and payment from the proceeds to respondent of the sum of $10,255.26, this sum being the total of the wrongful withdrawals above referred to, and directing the remaining assets to be distributed equally among the parties.

Appellant contends that the trial court erred in finding that there was a modification of the original agreement of purchase by respondent from appellant of a one-half interest for $9,000 and in finding that the contributions by respondent of moneys, real property, cattle, etc., were capital investments offsetting the original capital investment of appellant.

The evidence discloses that, although the partners after entering into their original agreement of purchase, never expressly by spoken or written word changed that agreement, their subsequent conduct and transactions conclusively show a modification thereof as found by the trial court. The only payment made by respondent toward the purchase price were the sums of $1,000 made three weeks after the original agreement, and of $2,000 some four months later. The first payment was made directly to appellant and the second was deposited to the credit of the partnership, appellant receiving a credit on its books therefor. Respondent testified that, when he offered to give a note for the balance, appellant advised him that he could deliver cattle to apply on his indebtedness to the firm instead. There appears to have been no further conversation between the partners with reference to any balance due appellant. As from time to time contributions of cattle, hay and real property were made by respondent, an agreed valuation thereof was set up on the books as a credit to his account. At no time did appellant make demand for the balance of the purchase price, nor did he suggest that they were not equal partners. Appellant testified that he presumed that they were such. In fact, the affirmative allegations contained in appellant's answer that "after consideration [of]

such withdrawals, the profits of the business, and the contributions by each partner to the business above set forth, the net result is that at the close of the year 1929 the investment of each partner in the business was approximately equal'', admits of no interpretation other than that the contributions of one partner were intended to and did offset the contributions of the other. There was ample consideration for such a modification. The capital of the partnership and the required amount of respondent's contribution were both thereby doubled.

■ Appellant argues that the contributions by respondent were in fact merely sales to the partnership for which he received credit. If, for the purpose of argument, we should assume his contention to be correct, we do not understand nor has he pointed out how he has been prejudiced by the conclusion reached by the trial court. If the cattle and the other porperty were sold to the partnership, respondent is entitled to payment therefor. If respondent purchased a one-half interest in the business, the capital contribution by each partner would be his respective one-half interest and appellant would be entitled to a credit as capital contribution of only $9,000 and not $18,000 as credited by the trial court. The unpaid balance of the purchase price would be an obligation owing to appellant individually, not to the partnership. In any event, respondent would be entitled to an equalization of the excess amounts withdrawn by appellant under the guise of profits and salary.

■ The allegation of the complaint that the difference between the withdrawals of respondent and appellant was approximately $5,000 did not preclude the trial court from finding that difference to be the sum of $6,921.94. `` . . . it is apparent that the amount stated in the complaint is intended to be only an approximation of the indebtedness of defendant, and the allegations should not be held to preclude the court from finding the exact condition of the account. Indeed, it is too late for appellant to make the point, since the evidence as to the whole amount appropriated by defendant was received without objection. . . . '' (*Brandt* v. *Salomonson*, 17 Cal. App. 395 [119 Pac. 946, 947].) The trial court has, upon competent and sufficient evidence, including the examination in detail of all of the

transactions of the partnership from its inception in 1922 until the close of the year 1929, found that the contribution of the partners to the partnership capital was equal, that the appellant has, without authority and while the business was carried on at a loss, withdrawn from the partnership under the guise of profits the sum of $6,921.94 in excess of the amounts withdrawn by respondent, and that he has in violation of the partnership agreement withdrawn the sum of $3,333.32 as salary. It has correctly ordered that after payment of the partnership debts and before distribution of the remaining assets among the partners, the withdrawals of the partners be equalized by the payment to respondent of an amount equivalent to the excess withdrawn by appellant.

The judgment is affirmed.

Knight, J., and Tyler, P. J., concurred.