Filed 9/11/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTOPHER WARREN, JR., | B253271 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PC053343) |
| v. | |
| CHRISTOPHER WARREN, SR., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Reversed.

Law Office of Charles K. Wake and Charles K. Wake for Defendants and Appellants.

Greenberg & Bass and James R. Felton for Plaintiff and Respondent.

———————————

## INTRODUCTION

Before the default may be entered of a defendant in an action for an accounting, must the plaintiff give notice of the damages sought? One line of cases concludes that notice of damages must be given before a default is entered in an accounting action. Another line concludes notice need not be given. Here, plaintiff and appellant Warren, Jr., (Warren, Jr.) did not give notice of damages to defendants and appellants Christopher Warren, Sr., (Warren, Sr.) and Share the Night, Inc. (STN) before their default was entered in this accounting action.

Although we agree with cases finding that a plaintiff in an action for accounting need not give notice of damages before a defendant's default is entered, we also find that an exception to that rule applies: where, as here, plaintiff knew what his damages were *and* defendants did not have access to that information, notice must be given before default is entered. We therefore reverse the order denying defendants' motion to set aside their default and default judgment.

## BACKGROUND

Brook Kerr and Warren, Sr., are Warren, Jr.'s, parents. In 2001, when Warren, Jr., was a minor, Kerr and Warren, Sr., formed STN, a family loan out corporation. Warren, Jr.'s, earnings from his work as an actor were deposited into the company's account, and his "life" expenses were paid from it. In 2008, Warren, Jr., turned 18. He continued to deposit his earnings into STN, and STN continued to pay his expenses. But, in 2011, when Warren, Jr., asked to be paid a salary from STN, his request was refused. Warren, Jr., then learned that his parents had used a "vast majority" of the funds for their personal expenses.

Based on these allegations, Warren, Jr., on July 11, 2012, filed a complaint for breach of oral contract, breach of fiduciary duty, and for an accounting against his parents and STN.[1] The complaint did not specify a damage amount but did allege that "hundreds

---

[1] Around the same time Warren, Jr., filed his action, Kerr was pursuing a divorce from Warren, Sr.

2

of thousands of dollars had been spent on Kerr and Warren Sr. in derogation of their fiduciary duties."

When all defendants failed to answer the complaint, Kerr's and STN's defaults were entered on October 17, 2012. Warren, Sr.'s, default was entered on February 25, 2013. The request for entry of default specified that Warren, Jr., sought $337,186.68 in damages plus costs. Warren, Jr., also submitted a prove-up package consisting of a summary of the case, his attorney's declaration, the declaration of STN's accountant, Mark Varshawsky, and Warren, Jr.'s, declaration. Varshawsky prepared STN's 2008-2010 tax returns and a schedule of expenses for those years. Based on his analysis of the documents, Warren, Jr., was entitled to distribution of $337,186.68.

Judgment by default in the amount of $338,096.13 was entered on March 8, 2013 against all defendants.[2]

Less than six months later, on August 2, 2013, Warren, Sr., and STN moved to set aside the default and default judgment because Warren, Sr., was not properly served; plaintiff failed to give notice of damages prior to entry of default; and the default and judgment were obtained through mistake, inadvertence, surprise or excusable neglect. (Code Civ. Proc. § 473, subd. (b).)[3] Warren, Jr., opposed the motion.

On October 9, 2013, the trial court denied the motion without addressing the notice issue.[4]

---

[2] A writ of execution was issued, and the Los Angeles County Sheriff levied on bank accounts held by defendants. Warren, Sr., also moved to quash the writs of execution.

[3] All statutory references are to the Code of Civil Procedure.

[4] The court did find that Warren, Sr., made a general appearance in the action by personally participating in a case management conference. The court addressed section 473, subdivision (b), finding that although the motion alluded to attorney neglect so extreme it constituted client abandonment, the motion failed to brief the issue. The court therefore denied the motion without prejudice as to that issue only.

3

Warren, Sr., and STN contend that the default and default judgment must be set aside because Warren, Jr., failed to give notice of damages before obtaining their defaults. We agree.

On appeal from an order denying relief from default or a default judgment, we will not disturb the trial court's factual findings where they are based on substantial evidence. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828.) "This does not end the matter, however, because whether the default and default judgment complied with constitutional and statutory requirements are questions of law as to which we exercise independent review." (*Ibid.*)

In the case of a defendant's default, "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint" or in a statement required by section 425.11. (§ 580, subd. (a); see also *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 ["It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend"].) "[T]he primary purpose of . . . section [580] is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826; see also *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 398.)

What notice is due when, as here, the complaint seeks an accounting raises conflicting principles:[5] the nature of an accounting action does not lend itself to specificity with respect to alleging damages in the complaint; but "due process requires notice of the limits of financial liability for a defaulting defendant." (*Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1263 (*Ely*).) "These principles seem at first glance to catch a plaintiff in a bind where he is due no accounting if a sum is specified and cannot receive a default judgment if a sum is not specified." (*Id.* at p. 1262.)

---

[5] Although the complaint also contains breach of contract and breach of fiduciary duty causes of action, the gist of the action is for an accounting.

Cases have resolved the conflict differently. The complaint in *Ely*, for example, asked for a dissolution of partnerships and an accounting, but it did not specify a sum due to the plaintiff. (*Ely, supra,* 224 Cal.App.3d at p. 1260.) The plaintiff's request for entry of default did not specify an amount owed. (*Ibid.*) No amount was specified until the day the court ordered entry of default, at which time the plaintiff testified about sums owed. Judgment was granted for the plaintiff. In reversing the judgment, *Ely* analogized an action for an accounting to one for personal injury or wrongful death, which, by statute (§ 425.11) may not allege the amount sought. (*Ely,* at p. 1263.) In such a case, before a default may be taken, the plaintiff must give notice of the amount and nature of the damages sought to be recovered. (*Ibid.*) *Ely* likewise found that a "plaintiff who seeks an accounting has the solution of postcomplaint and predefault notice to the defendant of the amount plaintiff will seek to prove due him if the defendant defaults. . . . [T]he notice must be given with adequate time for the defendant to respond before a default is entered." (*Ibid.*; accord, *Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1527; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 541-542.)

By contrast, *Cassel v. Sullivan, Roche & Johnson* (1999) 76 Cal.App.4th 1157 (*Cassel*), disagreed with *Ely*'s analogy to personal injury or wrongful death actions because in those actions the "damages are completely within the plaintiff's knowledge" and "a defendant who has no prior notice of the damages sought will be deprived of his or her due process rights, and will be unable to reasonably assess the amount he or she will be liable by defaulting." (*Cassel,* at p. 1163.) But, where the plaintiff seeks an accounting and, as in *Cassel*, the defendant-law partnership possesses the financial information from which it could calculate the amount of its liability, "the complaint need only specify the type of relief requested, and not the specific dollar amount sought. We foresee no danger that defaulting defendants will be taken by surprise by judgments entered against them, because, like spouses facing property division, they will be in possession of the essential information necessary to calculate their potential exposure." (*Id.* at pp. 1163-1164; but see *Van Sickle v. Gilbert, supra,* 196 Cal.App.4th at p. 1527 ["The fact that the defendant may have access to materials from which it can calculate the

5

extent of its liability is not a substitute for *notice from the plaintiff* of the amount of money the plaintiff is seeking"].)

We agree with *Cassel* that an action for an accounting is not like one for personal injury or for wrongful death. Generally, the defendant, not the plaintiff, in an accounting action has the information necessary to determine its liability for damages. Generally, the plaintiff does not have equal access to that information. Therefore, the defendant's due process right to notice of potential liability will not be offended by the plaintiff's failure to serve a predefault notice of damages in accounting actions.

Given the specific circumstances before us, however, this case does not fall under that general rule. In *Cassel*, the defendant-law partners possessed information "at least equal to (and according to Cassel's complaint, greater than) that possessed by Cassel regarding the partnership's financial status from which Cassel's interest would be calculated."[6] (*Cassel, supra,* 76 Cal.App.4th at p. 1163.) Here, STN was not a law partnership. STN was a "family loan out corporation" to which Warren, Jr., contributed his earnings. Warren, Jr., clearly had access to the essential information from which he could calculate the amount due him; specifically, Warren, Jr.'s, prove up package included the declaration of STN's accountant, Varshawsky. Based on 2008-2010 tax returns for STN that "were provided to" Varshawsky and a schedule of expenses, he calculated the distribution owed to Warren, Jr.

Warren, Sr., raised an issue as to whether he had access to this information. Warren, Sr., submitted his declaration stating that Kerr managed the family finances, including funds received by STN for Warren, Jr.[7] Kerr essentially cut Warren, Sr., off financially by, for example, blocking his access to jointly held accounts, turning off his cell phone, failing to pay his credit cards, and colluding with Warren, Jr., against

---

[6] Cassel's judgment was taken directly from the partnership's financial statement for the six-month period ending just before Cassel's withdrawal from the partnership. (*Cassel, supra,* 76 Cal.App.4th at p. 1163.)

[7] No evidentiary objections were made to Warren, Sr.'s, declaration.

Warren, Sr. [8] Warren, Jr., submitted no evidence disputing that Warren, Sr., was essentially locked out of the family corporation, and the trial court made no findings on that issue. Warren, Jr., therefore might have had access greater than Warren, Sr.'s, to the pertinent information. Under these circumstances, where Warren, Jr., had access to the necessary information before filing his request for entry of default, and Warren, Sr., has raised an issue as to his (Warren, Sr.'s) access to that information, we will not apply *Cassel.*

Nor can we find that defendants had sufficient notice of the damages based on the complaint. A defendant must receive notice of liability a reasonable time *before* default is entered so that the defendant can make a reasoned decision whether to take action. (*Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 435; see *Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1322 [statement of damages must be served within a reasonable time before default is entered, although there is no hard and fast rule regarding the minimum amount of notice that will satisfy due process].) The complaint's only possible reference to damages was a vague statement that "hundreds of thousands of dollars had been spent on Kerr and Warren Sr. in derogation of their fiduciary duties" to Warren, Jr. This does not constitute reasonable notice of defendants' potential liability.

---

[8] Warren, Sr., submitted, for example, documents indicating that Kerr and Warren, Jr., were using the same attorney on another matter.

7

**DISPOSITION**

The order denying the motion to set aside the default and default judgment is reversed.  Defendants and appellants to recover costs on appeal.

**CERTIFIED FOR PUBLICATION**


ALDRICH, J.


We concur:



EDMON, P. J.



JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.