Filed 9/13/13  Flutie Entertainment USA, Inc. v. Gidding CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| FLUTIE ENTERTAINMENT USA, INC., | B243428 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC419636) |
| v. | |
| JOHN GIDDING et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Holly Kendig, Judge.  Affirmed.

John Gidding, aka Can D. Gidding, in pro. per., for Defendants and Appellants.

Ingber & Associates, Kenneth Ingber for Plaintiff and Respondent.

## INTRODUCTION

Defendants and appellants John Gidding[1] and John Gidding Designs, Inc. (defendants) appeal from the trial court's order denying their motion under Code of Civil Procedure section 473.5 (section 473.5) to set aside a default judgment. The trial court denied the section 473.5 motion as, inter alia, untimely because it was filed more than six months after plaintiff and respondent Flutie Entertainment, Inc. (plaintiff) served the notice of entry of the default judgment.

We hold that the trial court's findings that the notice of entry of default judgment was properly served on defendants and that they had actual knowledge of the entry of the judgment by September 2011 were supported by substantial evidence. As a result, the trial court did not abuse its discretion by denying the section 473.5 motion as untimely. We therefore affirm the order denying defendants' section 473.5 motion to set aside the default judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint against defendants on August 11, 2009. On September 14, 2009, plaintiff filed a proof of personal service of summons on the individual defendant and on October 30, 2009, plaintiff filed a proof of personal service of summons on the agent for service of process of corporate defendant.[2]

---

[1]    The individual defendant's true name is Can D. Gidding, but he was erroneously sued as John Gidding because, as he admitted in declarations, he was known professionally as John Gidding and he used that name in the United States. Because, as discussed below, Can Gidding's father is also named John Gidding, we will refer to Can Gidding as "the individual defendant" to avoid confusion.

[2]    It is undisputed that the individual defendant was the agent for service of process of the corporate defendant.

On March 29, 2010, plaintiff filed a first amended complaint against defendants. On May 27, 2010, plaintiff filed proofs of substituted service on the individual and corporate defendants.

On July 19, 2010, plaintiff filed a request for entry of default against defendants, which was entered by the clerk of the court that day. On February 15, 2011, the trial court entered a judgment by default against defendants in the amount of $57,761.60. On February 25, 2011, plaintiff served defendants by mail—at the same address where the summonses on the original complaint had been personally served (service address)—with a copy of a notice of entry of the judgment.

On April 12, 2012, defendants filed their section 473.5 motion to set aside the default judgment supported by, inter alia, the declarations of the individual defendant and his former roommate. The individual defendant claimed in his declaration, inter alia, that he did not become aware of the lawsuit against defendants until his father informed him of it in December 2011.

At the hearing on the section 473.5 motion to set aside the judgment, the trial court sustained plaintiff's objections to most of the declaration testimony submitted by defendants in support of their motion. The trial court then reiterated a finding concerning service of process that it had made at the hearing on an earlier motion to vacate the default judgment.[3] "I'll tell you right now that my tentative on this motion is to deny it. I actually think that at the prior hearing, as part of my opinion, I commented about the effect of the process server and whether [the individual defendant] was properly served. [The individual defendant] who is also known as John Gidding. [¶] And I noted on the record at that hearing that *there was no doubt that he* [*the individual defendant*] *was properly served*, and since he was properly served and he admits to being an officer, director and the agent for service of John Gidding Design, Inc. that *John Gidding Design,*

_____

[3]     In December 2011, the individual defendant's father, who was also named John Gidding, made a motion to void and vacate the default judgment. In January 2012, the trial court issued an order denying that motion. The trial court's ruling on that motion has not been appealed.

*Inc. was also properly served* by an officer, director or agent for service of process. [¶] That's among the things that I said in that prior ruling. I haven't changed my mind particularly, although some new issues were presented and I'll go through them." (Italics added.)

As for the individual defendant's claim that he did not become aware of plaintiff's lawsuit against defendants until December 2011, the trial court stated: "[The individual defendant] states that he was not aware of this lawsuit until December 2011 when his father told him for the first time about the lawsuit, and that his father's attempt to set aside the judgment had been denied, referring to the previous attempt to set this aside. However, [the individual defendant] admits that he signed a declaration on September 22nd, 2011 with all the information about this litigation on the first page and he submitted it to this court on September 27th, 2011, and it was considered by this court at the prior hearing on his father's attempt to set aside the judgment against him. And now he says that he signed the declaration with this case name, caption and court information but that he didn't know that there was a lawsuit pending at this time. [¶] I simply do not find it credible."

The trial court then summarized its findings regarding service of process as follows: "I find that [the individual defendant's] denial of service and notice of this lawsuit is just not credible and I choose, as I did at the first time, to credit the evidence of service [supplied] by the relatively disinterested process server . . . . The law supports it, the law tells me that the court is not required to accept self-serving evidence contradicting the process server's declaration especially when the court doesn't find it credible."

After finding that defendants had been served and were aware of the existence of the lawsuit well prior to December 2011, the trial court found that the section 473.5 motion was untimely, explaining, "I will also say, alternatively, that I think there is a very good argument that this motion is untimely on the same analysis because it was brought more than six months after written notice of the judgment was served at [the individual defendant's service address] and it was . . . forwarded to his father. So if it's true that [the individual defendant's] mail to the [service] address was really forwarded to his

4

father, which is what the defendant's declaration says, then the [service] address was his usual mailing address and this notice of the judgment sent there on February 25, 2011, . . . is also good and that would make the whole . . . motion untimely. [¶] I also agree with . . . the opposing party's position that the defendant clearly had notice in September 2011 when [the individual defendant] executed and filed a declaration in this court on this case in support of a motion to vacate a judgment against the defendants." Based on the foregoing factual findings, the trial court denied the motion.

**DISCUSSION**

### A.  Standard of Review

We review an order denying a section 473.5 motion to set aside a default for abuse of discretion. (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 547.) "'A motion to vacate a default and set aside [a] judgment (§ 473) "is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal."' [Citation.] The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. [Citation.]" (*Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318-1319.) But a decision denying a motion to set aside a default is scrutinized more carefully than one granting relief because the law favors trial on the merits. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980.) "[D]efault judgments . . . are looked upon with disfavor. [Citation.]" (*Nicholson v. Rose* (1980) 106 Cal.App.3d 457, 462-463.) "[A] trial court['s] . . . discretion to vacate the entry of a default or subsequent judgment . . . may be exercised only after the party seeking relief has shown that there is a proper ground for relief, and that the party has raised that ground in a procedurally proper manner . . . ." (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495.)

The trial court's factual findings on disputed issues, however, are reviewed under the substantial evidence standard of review. "When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial

5

evidence rule.  If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)  Under the substantial evidence test, we resolve all conflicts in the evidence in favor of the prevailing party, and we draw all reasonable inferences in a manner that upholds the trial court's ruling.  (*Holmes v. Lerner* (1999) 74 Cal.App.4th 442, 445.)  Substantial evidence has been defined as "evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)  "Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence." (*Ibid*.)  "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." ( *Id*. at p. 652.)

"Moreover, [under the substantial evidence standard,] we defer to the trier of fact on issues of credibility.  (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065 [1 Cal.Rptr.2d 195].)  '[N]either conflicts in the evidence nor "'testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" [Citations.]  Testimony may be rejected only when it is inherently improbable or incredible, i.e., "'unbelievable *per se*,'" physically impossible or "'wholly unacceptable to reasonable minds.'" [Citations.]' (*Ibid.*)" (*Lenk v. Total-Western, Inc*. (2001) 89 Cal.App.4th 959, 968.)

### B.    Timing Requirements of Section 473.5

"Section 473.5 grants the trial court discretion to set aside a default judgment taken against a party who lacked actual notice of the action, and it sets forth the procedure with which the party moving to have the judgment set aside must comply." (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 861.)  In pertinent part, that section provides:  "(a)  When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered

6

against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action. *The notice of motion shall be served and filed within* a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) *180 days after service on him or her of a written notice that the default or default judgment has been entered.*" (Italics added.)

### C.     Evidence Regarding Timeliness

The trial court found that the original complaint had been personally served on both the individual and corporate defendants in September and October 2009. That finding was based on the proofs of service executed under oath by the registered process server and a declaration from that process server confirming that he had been provided a picture of the individual defendant that he used to effect personal service of the complaint on him. That evidence was sufficient to support the trial court's finding that the individual defendant had been personally served with the original complaint in both his individual capacity and in his capacity as agent for service of process of the corporate defendant. The trial court also found that defendants had been served with the first amended complaint based on the proofs of substituted service and declarations of due diligence executed under oath by the process server. The declarations showed that the process server made nine attempts at personal service during a seven-day period, but was unable to effect personal service due to the security at the apartment complex. The proofs of service confirm that, after making diligent attempts at personal service, the process server left a copy of the first amended complaint with apartment complex's "concierge" and thereafter mailed a copy to the service address where the individual defendant previously had been personally served. That evidence supported the trial court's finding that the defendants had been served with the first amended complaint.

Based on its findings concerning service of process, the trial court further found that defendants had been properly served with the notice of entry of default. According to the trial court, the individual defendant's declaration established that mail he received

7

at the service address was being regularly forwarded to his father. The trial court therefore concluded that the service address was the individual defendant's regular mailing address and that the service of the notice of entry of default judgment by mail to that address was proper. In addition, based on the individual defendant's September 22, 2011, declaration in support of his father's motion to vacate the default judgment, the trial court found that the individual defendant had actual knowledge that the judgment had been entered over six months prior to his motion to set aside the judgment. Thus, even if that service by mail of the notice of entry of default was ineffective in establishing the individual defendant's constructive knowledge of the entry of the judgment, his declaration was sufficient to establish that he had actual knowledge of it by September 2011. The evidence concerning the service of the notice of entry of the default judgment and the individual defendant's actual knowledge of the entry of that judgment, was sufficient to support the trial court's findings on when the individual defendant had knowledge of the entry of judgment.

In addition, each of the trial court's findings on the timeliness issue was also based on its determination that the individual defendant was not credible on the disputed factual issues raised by the motion. In light of those credibility determinations, it was reasonable for the trial court to reject the individual defendant's self-serving denials concerning service of process and receipt of the notice of entry of default judgment, and to accept the sworn testimony of the process server. As noted above, under the substantial evidence standard of review, we defer to the trial court's credibility determinations. Based on the trial court's credibility determinations—each of which was adverse to the individual defendant—substantial evidence supported the findings that defendants were properly served by mail with the notice of entry of default on February 25, 2011, and that, in any event, they were actually aware that the judgment had been entered by September 2011. Because defendants did not file their section 473.5 motion to set aside the default judgment until April 12, 2012, i.e., well over 180 days from the notice and actual knowledge of entry of the default judgment, the trial court did not abuse its discretion in denying that motion as untimely.

8

## DISPOSITION

The trial court's order denying defendants' section 473.5 motion to set aside the default judgment is affirmed.  Plaintiff is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.